UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X

GERALD GRAY,

                        Plaintiff,              **REPORT AND RECOMMENDATION**

    v.                                                  20-cv-1898 (GRB) (ST)

MARK ESPER, SECRETARY OF DEFENSE,
and DEFENSE CONTRACT MANAGEMENT
AGENCY

                        Defendants.
------------------------------------------------------------X

**TISCIONE, United States Magistrate Judge:**

      Before this Court is a motion by Defendants to dismiss Plaintiff's complaint alleging a violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et seq.* Plaintiff's complaint arises out of his termination from the Defense Contract Management Agency (DCMA) during the probationary period of his employment. Defendants claim Plaintiff was not able to obtain the security clearance required for the job, while Plaintiff claims this rationale was a pretext for a firing that was actually because of racial animus. For the reasons below, I recommend Defendants' motion be GRANTED.

## BACKGROUND

      Plaintiff is a forty-six-year-old African American man who began applying for a job as a Contract Administrator at the DCMA in April of 2018. Pl. Compl. ¶ 3, ECF No. 1; Def. Br., 2, ECF No. 11-1. During his application process, he was told by a human resources employee he would not receive a final offer letter until the security clearance background check was completed. Pl. Compl. ¶ 5, ECF No. 1. He claims he received two emails from an investigator

1

and that he completed the tasks requested in April of 2018. *Id.* On September 10, 2018, he received a final offer letter, with a start date of October 14, 2018. *Id*; Def. Br., 3, ECF No. 11-1.

Soon after his hiring, Plaintiff had several interactions with a Mr. Martin Han, the Supervisory Contract Specialist at DCMA Garden City, which he claims troubled him. Plaintiff claims that on the first or second day of work, Mr. Han called Plaintiff into his office, and told him, "You don't have to accept this position. You can go back to the Agency you transferred from." Pl. Compl. ¶ 7, ECF No. 1. Plaintiff interpreted that statement as Mr. Han "using a familiar racist trope 'go back to where you came from.'" *Id.*

On the fourth or fifth day of work, Plaintiff says Mr. Han told him that he did not go through the proper hiring process at DCMA because he "should have been interviewed and selected by my panel." *Id.* at ¶ 8. After that conversation, Plaintiff joined the on-site union and shared his conversations with Mr. Han with the Union's President, Dorothy Fowler. *Id.* Plaintiff alleges Ms. Fowler "told him about some of the cases she has worked on at DCMA regarding Americans of African descent" and said, "the security clearance and suitability process was used at DCMA to remove certain people from their positions." *Id.* at ¶ 19.

On his eighth or ninth day at work, Plaintiff says Mr. Han requested his presence in Director Eileen Kelly's office, where he was informed that his credentials would be confiscated, he would be placed on administrative leave, and he would be escorted out of the building. *Id.* at ¶ 9. Plaintiff claims though he was given no documentation at the time, he was told he would receive a letter in the mail detailing the situation. *Id.* Plaintiff says he did not receive any letter and, in December of 2018, Mr. Han told him there were "security issues" and that he should begin looking for another federal position. *Id.* at ¶ 10.

According to Defendants, the Army Servicing Team (AST) extended the job offer at DCMA to Plaintiff in error and subsequently informed Ms. Kelly that Plaintiff had been hired in error without the security clearance required for his position. Defendants have attached to their brief an email correspondence detailing the situation. In the correspondence, Neil Mintz, a Director at DCMA Garden City where Plaintiff worked, wrote on October 22, 2018, "Eileen Kelly was contacted by AST with regard to a potential issue with security related to [Plaintiff]. Appears that this employee was cleared to onboard with DCMA and that this may have been an error since he may not have cleared security." Def. Br., Ex. C, 4, ECF No. 11-3. At a later point in that email chain, on October 25, 2018, Christine Griffith, an HR Specialist, responded, "I am checking to see who should terminate his employment since it is not due to performance or conduct, but an oversight during his hiring process." *Id.* at 1.

Plaintiff claims there could not have been issues with his security clearance because he had completed a five or six-month investigation before arriving at DCMA Garden City and had had prior clearances at the Department of the Interior in 2008 and the United States Army Reserve HQ in 2005. Pl. Compl. ¶ 11, ECF No. 1. Defendants attach to their brief a notification of a termination of Plaintiff by the U.S. Army Reserve dated May 30, 2008 which lists as the reason for removal "Absence without leave and failure to follow proper leave requesting procedures." Price Aff. ¶ 2, ECF No. 11-2; Def. Br., Ex. E, ECF No. 11-3. Defendants also have attached a notification of termination of Plaintiff by the Department of the Interior dated August 26, 2011, listing the reason for removal as "Inability to obtain a favorable background investigation." Price Aff. ¶ 2, ECF No. 11-2; Def. Br., Ex. D, ECF No. 11-3.

On January 14, 2019, Plaintiff finally received documentation: a notice of a proposed termination. Pl. Compl. ¶ 13, ECF No. 1. The letter Plaintiff received said the reason for the

3

proposed termination was "that you do not have security clearance and therefore, are unable to hold a Non-critical Sensitive position" and said, "no alternate non-sensitive positions are available at DCMA Garden City." Def. Br., Ex. F, 1, ECF No. 11-3.  The letter also informed Plaintiff he had an opportunity to respond and provide evidence as to why the action was unwarranted, elect a representative to assist in that process, and could contact the Human Resources office.  It also said Plaintiff would remain on administrative leave in the meantime. *Id.* at 1-2.  Plaintiff submitted a response to DCMA officials on January 24, 2019. Pl. Compl. ¶ 23(a), ECF No. 1.

On January 15, 2019, Plaintiff says he received a message from a John Mainville who told him he had been retained to conduct his background investigation. *Id.* at ¶ 15.  He claims Mr. Mainville expressed dismay when he heard Plaintiff had been on administrative leave since October because of the security clearance issues. *Id.*  Mr. Mainville told Plaintiff he would be contacted by an investigator in St. Louis for an interview. *Id.* at ¶ 16.  Subsequently Plaintiff received a phone call from Special Investigator Bailey Bauer scheduling a meeting for February 6, 2019 to begin the security clearance process. *Id.* at ¶ 17.  Plaintiff informed Eileen Kelly and Dorothy Fowler of that meeting. *Id.*

After that meeting, on February 26, 2019, Plaintiff says he received a voicemail from Mr. Bauer saying he still had "a few quick questions" for Plaintiff and asking Plaintiff to call him back. *Id.*  Plaintiff does not say whether he called Mr. Bauer back or what happened to the process after that voicemail.

On March 20, 2019, Ms. Kelly sent Plaintiff a letter with a final decision on his termination, finding, "The information described in the proposal notice is fully supported by a preponderance of the evidence and warrants your termination…Because you are not cleared for

4

this position, you have failed to meet a condition of employment and will be separated effective March 22, 2019." Def. Br., Ex. G, ECF No. 11-3.  The decision letter also gave Plaintiff four options for relief: filing an appeal to the U.S. Merit Systems Protection Board within 30 days of termination, contacting the DCMA Equal Employment Opportunity Office within 45 days of termination, submitting a whistleblowing reprisal complaint to the U.S. Office of Special Counsel, or a separate grievance procedure. *Id.*  The notice said Plaintiff "may choose only one method, and the one you choose first is considered your binding election." *Id.*

Plaintiff first filed an appeal to the Office of Special Counsel but received a letter back saying it deferred the allegations to the EEO process for resolution. Pl. Compl. ¶ 23(b)(i), ECF No. 1. Subsequently, on June 18, 2019, Plaintiff filed a mixed discrimination complaint to the EEOC and MSPB together. *Id.* at ¶ 23(c).  The EEOC claimed to have never received this initial complaint. *Id.* at ¶23(c)(i).  Plaintiff claims that during this process the initial investigator informed him that when the investigator interviewed Eileen Kelly, she had "lied" about the content of the decision letter to remove Plaintiff. *Id.* at ¶ 23(e)(i).  The MSPB dismissed Plaintiff's complaint because Plaintiff was in a probationary status when he was terminated and therefore was not an "employee" and because Plaintiff filed his appeal 50 days later than required. Def. Br., Ex. H, ECF No. 11-3.  That decision gave Plaintiff the option to file a request for review with the EEOC within 30 days of September 3, 2019. *Id.*

On October 8, 2019, Plaintiff filed a petition with the EEOC to review the MSPB decision. Def. Br., 10, ECF No. 11-1.  On October 10, the EEOC denied consideration of the petition because the MSPB had not addressed the merits such that the issues were within the EEOC's jurisdiction. Def. Br., Ex. I, ECF No. 11-3.  The EEOC remanded the matter to the

5

DCMA EEO office with an order that the date on which Plaintiff filed the appeal with the MSPB (June 18, 2019) shall be deemed the date of initial contact with an EEO counselor. *Id.* at 2.

Plaintiff then filed a complaint with the DCMA EEO Office on November 26, 2019. Def. Br., Ex. J., 1, ECF No. 11-3.  That office dismissed Plaintiff's claim for untimeliness because his initial contact with an EEO official (deemed June 18, 2019) was in excess of the required 45 days from the date of the allegedly discriminatory action, the termination which occurred March 22, 2019. *Id.* at 1-2.  Plaintiff claims he received this opinion from the EEO office on February 10, 2020, despite it being dated January 2, 2020. Pl. Comp., Pro Se Form, 5-6, ECF No. 1.  The decision advised Plaintiff of his right to appeal the decision by filing a Title VII action in federal district court within 90 days of receipt of the opinion. Def. Br., Ex. J, ECF No. 11-3.  Plaintiff filed this action on April 22, 2020. Pl. Compl., ECF No. 1.

Before the Court is Defendants' motion to dismiss Plaintiff's complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and 12(b)(6) for failing to exhaust administrative remedies and failure to state a plausible claim for relief under Title VII.

## LEGAL STANDARD

"Dismissal is proper under Rule 12(b)(1) for lack of subject matter jurisdiction "when the district court lacks the statutory or constitutional power to adjudicate' the claim…" *McNeil v. Yale Chptr.,* 2021 WL 5286647, 2021 U.S. App. LEXIS 33750 at *2 (2d Cir. Nov. 15, 2021) (quoting *Moore v. PaineWebber, Inc.,* 189 F.3d 165, 169 n.3 (2d Cir. 1999)).  When the existence of subject matter jurisdiction turns on a factual issue, the court must "[construe] all ambiguities and [draw] all inferences in [Plaintiff's] favor," but may also look beyond the complaint and "refer to evidence outside the pleadings." *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir. 2000).

6

When assessing a Rule 12(b)(6) motion to dismiss, a court must determine whether the complaint states a legally cognizable claim by making allegations that, if proven, would show that the Plaintiff is entitled to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). *Twombly* and *Iqbal* command that all elements of the Plaintiff's claim must be plausibly alleged in the complaint, such that the complaint contains more than "naked assertions," or allegations that amount to "sheer possibility," containing instead "factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 557). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.*

In assessing a motion to dismiss under Rule 12(b)(6), the Court "must accept all factual allegations as true and draw all reasonable inferences in favor of the non-moving party." *Giambrone v. Meritplan Ins. Co.*, 13-CV-7377 (MKB) (ST), 2017 WL 2303980 at *3 (E.D.N.Y. Feb. 28, 2017) (internal quotation marks, citation omitted) (*adopted by Giambrone v. Meritplan Ins. Co.,* 13-CV-7377, 2017 WL 2303507 (E.D.N.Y. May 24, 2017)).

A defendant's claim of failure to exhaust administrative remedies is "properly raised in a motion to dismiss under Rule 12(b)(6) for failure to state a claim." *Ayala v. Metro One Sec. Sys., Inc.,* No. 11-CV-233, 2011 WL 1486559, 2011 U.S. Dist. LEXIS 42325 at *2-3 (E.D.N.Y. Apr. 19, 2011).

When the Plaintiff is proceeding *pro se*, as here, his complaint "must be construed liberally with 'special solicitude' and interpreted to raise the strongest claims that it suggests."

7

*Hogan v. Fischer,* 738 F.3d 509, 515 (2d Cir. 2013) (quoting *Hill v. Curcione,* 657 F.3d 116, 122 (2d Cir. 2011)). That said, the Court "cannot invent factual allegations that [a *pro se* plaintiff] has not pled." *Chavis v. Chappius,* 618 F.3d 162, 170 (2d Cir. 2010). A *pro se* Plaintiff's factual allegations must still rise to the *Iqbal* and *Twombly* standard and, when accepted as true, "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

## DISCUSSION

### I.  Defendants' 12(b)(1) Motion to Dismiss Should be Denied

Defendants argue that because the Federal Courts do not have the capacity to review security clearance decisions, this Court does not have subject matter jurisdiction and should dismiss on those grounds. I disagree.

Defendants anchor this argument in Title VII itself and in case law. Title VII says, in pertinent part, "Notwithstanding any other provision of this subchapter, it shall not be an unlawful employment practice for an employer to…discharge any individual from any position…if – (1) the occupancy of such position, or access to the premises in or upon which any part of the duties of such position is performed or is to be performed, is subject to any requirement imposed in the interest of national security of the United States under any security program in effect pursuant to or administered under any statute of the United States…and (2) such individual has not fulfilled or has ceased to fulfill that requirement." 42 U.S.C. §2000e-2(g).

The Supreme Court held, in *Department of the Navy v. Egan,* that the Merit Systems Appeals Board did not have statutory authority to substantively review the Navy's decision to revoke the Plaintiff's security clearance. *Dept. of the Navy v. Egan,* 484 U.S. 518 (1988). In its opinion, the Court wrote, "Certainly, it is not reasonably possible for an outside nonexpert body

8

to review the substance of such a judgment…" *Id.* at 529. The Court added, "Unless Congress specifically has provided otherwise, courts have traditionally been reluctant to intrude upon the authority of the Executive in military and national security affairs." *Id.* at 530.

Though the Second Circuit has not yet addressed when federal courts have subject matter jurisdiction over the merits of security clearance decisions, many other courts, including this one, have found that *Egan* precludes federal courts, as "nonexpert" bodies, from reviewing an executive decision to deny a security clearance under Title VII. *See Corbett v. Nepolitano,* 897 F. Supp. 2d 96, 116-17 (E.D.N.Y. 2012) (collecting cases from D.C. Cir., 4th Cir., 5th Cir., 9th Cir., E.D.N.Y., S.D.N.Y.).

I grant that this shows both statute and case law support Defendants' contention that a federal court does not have subject matter jurisdiction over the merits of a security clearance determination in a Title VII action (though I note that if *Egan* includes federal courts, there is no backstop to a discriminatory security clearance process). But even assuming that, this Court still has subject matter over Plaintiff's claims.

Plaintiff is claiming that an alleged failed security clearance was a pretext for why he was actually fired, which he contends was because of his race. Plaintiff says it is his contention that the "Defense [sic] non-discriminatory reason is unbelievable, unreasonable, and ridiculous." Pl. Opp. Br., 3, ECF No. 12. He also makes allegations in his complaint that the reason provided by Defendants was not the true reason he was terminated. *See* Pl. Compl. ¶ 3, ECF No. 1 ("[Plaintiff] was subjected to a coordinated discriminatory campaign masked as a federal clearance and suitability process…[which] led to [Plaintiff's] removal…"); *id.* at ¶ 10 ("…On December 11th of 2018 is when Mr. Han began (to Mr. Gray's knowledge) documenting this lie and/or conjecture about 'DCMA Garden City discovery of security issues after bringing you

9

onboard.'"); *id.* at ¶ 11 ("Let the record reflect, we [sic] contend, there were and are no security issues for DCMA Garden City to discover within the two weeks of Mr. Gray's arriving on DCMA's campus."); *id.* at ¶ 14 ("How can [Plaintiff] fail to obtain the required security clearance when he was told in October 2018 he had been cleared and could submit his letter of resignation to WVA and transfer to DMCA, and the second investigation was started on January 15, 2019…Again, this letter and process make no sense.").

Therefore, in order to consider Plaintiff's claims, the Court need not consider the actual merits of the underlying security clearance process or determination. Instead, the Court need only the consider of whether the security clearance determination was indeed the actual reason for Plaintiff's termination. Because Plaintiff is contesting both the causal link between his termination and the security clearance denial and whether he was actually denied a security clearance, not whether that was the right decision, this Court has subject matter jurisdiction. The Court need not inquire into the merits of any potential security clearance denial to determine whether that denial occurred and whether that was in fact why Plaintiff was terminated.

The first question is a factual issue: if Plaintiff's position required a security clearance and Plaintiff was indeed denied one, a Title VII suit would be barred by the Title VII national security provision. Therefore, jurisdiction turns on a factual question and the Court may look at Defendants' exhibits to resolve it. Defendants submit one regarding the security clearance. *See* Def. Br., Ex. A, ECF No. 11-3. It shows that the position Plaintiff was appointed to was required "Secret"-level clearance and was considered a non-critical sensitive position. *Id.* It also shows that a pre-appointment security check done on April 23, 2018, when Plaintiff first applied, and that it was found "Appointment should be delayed until the appropriate investigation is complete

10

and favorably adjudicated." *Id.* But no exhibits were submitted showing that any subsequent investigation resulted in a negative determination.

The second question, the question of whether a negative security clearance determination was the true reason Plaintiff was fired, is one this Court hears and decides regularly. *See e.g. Trent v. Town of Brookhaven,* 966 F. Supp. 2d 196 (E.D.N.Y. 2013); *Wojcik v. Brandiss,* 973 F. Supp. 2d 195 (E.D.N.Y. 2013); *Rose v. Mendon Leasing Co.,* 969 F. Supp. 865 (E.D.N.Y. 1997).

Because neither question requires an examination of the merits of the security clearance process, and because Defendants have not shown the national security exemption of Title VII applied here, I recommend that the Court deny the motion to dismiss for lack of subject matter jurisdiction.

## II. Defendants' 12(b)(6) Motion Should Be Granted and Plaintiff Should Be Granted Leave to File an Amended Complaint

Defendants also argue that Plaintiff's complaint should be dismissed because he failed to state a plausible claim of discrimination under Title VII and he failed to exhaust his administrative remedies.

### a. Plaintiff's Failure to State A Plausible Claim of Discrimination

Title VII provides that it "shall be unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. §2000e-2(a). Plaintiff is claiming that he was unlawfully discharged because of his race.

A Title VII claim requires Plaintiff to make a *prima facie* case that: (1) he is a member of a protected class; (2) he was qualified for the position he held; (3) he suffered an adverse

11

employment action; and (4) the adverse action took place under circumstances giving rise to an inference of discrimination. However, that is an evidentiary standard, not a pleading standard, appropriate at summary judgment stage but not at the motion to dismiss stage. *See Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72 (2d Cir. 2015) (citing in part *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)). Instead, the pleading standard for a Title VII claim requires Plaintiff merely make plausible claims that: (1) the employer took adverse action against him and (2) his race was a motivating factor in the employment decision. *Vega*, 801 F.3d at 87.

Plaintiff argues that he has established a plausible claim for the second prong under the "disparate impact" theory of discrimination expressed by the Supreme Court in *Griggs v. Duke Power Co.* 401 U.S. 424 (1971). In that case, the Supreme Court held that a facially neutral practice enacted by an employer without discriminatory intent may still violate Title VII if it is discriminatory in operation and cannot be shown to be related to job performance. *Id.* at 431-32. To successfully plead a Title VII disparate impact claim, Plaintiff must set forth enough factual allegations to plausibly support that: (1) there is a specific employment practice or policy; (2) a racial disparity exists; and (3) there is a causal relationship between the two. *Mandala v. NTT Data, Inc.,* 975 F.3d 202, 207-209 (2d Cir. 2020).

Here, Plaintiff has not met his burden. Plaintiff's claim appears to be that the security clearance process in DCMA is racially biased, and that there is a less racially biased security clearance process available (though he does not state what that is). His main support for those claims is that he himself is African American, was terminated, and heard others were treated similarly. However, in this case, a racial disparity claim under *Griggs* would require a factual showing of racial disparity in security clearance determinations, comparing a representative group of African American employees and applicants at DCMA to a representative group of

white employees and applicants. The singular experience of Plaintiff cannot show that the policy has a broad disparate impact. Generally, a claim like this would be supported by statistics comparing the group Plaintiff is a part of to the group of similarly situated white individuals. *Id.* at 209-11. Here, Plaintiff has not cited any statistics. Instead, the only thing Plaintiff has alleged which leads to an inference of a broader impact upon African American employees is that "The Union President, Dorothy Fowler, told Mr. Gray about some of the cases she has worked on at DCMA regarding Americans of African descent. Mrs. Fowler went into detail on how the security clearance and suitability process was used at DCMA to remove certain people from their positions." Pl. Compl. ¶ 19, ECF No. 1. However, Plaintiff attaches no affidavit from Ms. Fowler attesting to that, nor any of these alleged details. Without facts showing a disparate impact, Plaintiff cannot plausibly allege the security clearance procedure at DCMA had a disparate impact upon African American employees and applicants.

Given that Plaintiff is *pro se*, the Court should also analyze whether Plaintiff has met the pleading standard under a more general discrimination claim under Title VII. This, again, requires only plausible allegations that (1) the employer took adverse action against the Plaintiff and (2) his race was a motivating factor in the employment decision. *Vega*, 801 F.3d at 87.

There is no dispute between the parties that Plaintiff was terminated and that that constitutes an adverse employment action. Therefore, the question is whether Plaintiff has plausibly alleged his race was a motivating factor in the employment decision. I recommend the Court find he has not.

Plaintiff's complaint is sparse with regard to specific allegations giving rise to an inference that race was a motivating factor in his termination. His allegation as to what Dorothy Fowler said to him about security clearances is one such allegation. Another is that Plaintiff

13

claims he "does recall Mr. Han using a familiar racist trope 'go back to where you came from.'" Pl. Compl. ¶ 7, ECF No. 1.  But he then quotes Mr. Han's full statement which does not contain the racial animus Plaintiff alleges.  What Mr. Han actually said, according to Plaintiff, was, "You don't have to accept this position. You can go back to the Agency you transferred from." *Id.* Based on the full statement, I do not agree that Mr. Han's statement contained the racial overtones Plaintiff suggests.  Added to these allegations are the alleged irregularities in the process by which Plaintiff found out he did not obtain a security clearance: being hired without one, being placed on administrative leave without any paperwork, and not finding out about the rationale for his administrative leave until months after being placed on leave. *See id.* ¶¶ 9-10.

It is certainly possible that all these irregularities were part of a coordinated effort to terminate Plaintiff because of his race, but Plaintiff has not alleged sufficient facts to show it was plausible.  Though the hiring and termination certainly harmed Plaintiff, causing him to give up his previous job to relocate for a job he would soon-after lose, he has not alleged facts which would create a reasonable inference the termination was because of his race.  Ms. Fowler's alleged conclusory comments, that the security clearance process "was used" at DCMA to remove certain African American employees from their positions, offered without affirmation, support, or detail as to these other similar cases, cannot alone show that it is plausible Plaintiff was terminated because of his race.  Without specifics facts showing this occurred to other similarly situated employees, the Court cannot find a "mosaic" of facts sufficient to make a reasonable inference Plaintiff's termination was also due to his race. *See Vega,* 801 F.3d at 88 (citing *Gallagher v. Delaney,* 139 F.3d 338, 342 (2d Cir. 1998)).

      b. **Plaintiff's Other Claims, Raised for the First Time in a Responsive Pleading, and Leave to File an Amended Complaint**

Plaintiff only alleges violations of Title VII in his complaint. *See* Pl. Compl., 3, ECF No. 1. However, in his brief on this motion, he attaches an amended complaint, in which he asserts due process violations and violations of 5 U.S.C. §2302(b)(1). Pl. Opp. Br., Ex. A., ECF No. 12-1. As Defendants note, a party may not amend its complaint by advancing a new theory of liability for the first time in its opposition to a motion to dismiss. *Wright v. Ernst & Young LLP,* 152 F.3d 169, 178 (2d Cir. 1998). Therefore, the Court should not consider these new claims.

However, Federal Rule of Civil Procedure 15 instructs the Court may freely give leave to amend a complaint when justice so requires. FRCP R. 15(a)(2). Given that the federal courts are Plaintiff's last means of asserting his complaints and he has not yet had an independent body review his allegations on the merits, I believe justice so requires allowing him to plead alternative theories of liability. Additionally, Plaintiff is proceeding *pro se*, and a pro se Plaintiff should be afforded leave to amend after dismissal "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir. 2000). Given the irregularities in Plaintiff's hiring process and potentially in his termination process, as well as the clear harm Plaintiff suffered, I cannot say with confidence at this point that under no circumstances might a valid claim be stated.

Therefore, I recommend the Court grant the Plaintiff 30 days to file an amended complaint.

### c. Plaintiff's Failure to Exhaust Administrative Remedies

Because I recommend that Court find that Plaintiff has not plausibly alleged a Title VII claim, the Court need not reach the issue of whether Plaintiff's claim is time-barred. However, at this point Plaintiff has not made out a sufficient case to show he has met the standard for equitable tolling.

15

Defendants argue Plaintiff's claim is time-barred because he failed to file a timely charge with the EEOC. Plaintiff argues he has done all that is required to preserve his rights, noting that he filed a complaint with the OSC, MSPB, and EEOC. Pl. Opp. Br., 3, ECF No. 12.

Under 29 C.F.R. § 1614.105(a)(1), an aggrieved federal employee who believes "they have been discriminated against on the basis of race…must consult a[n] [EEO] Counselor prior to filing a complaint…within 45 days of the effective date of the action." It is Defendants' contention that because Plaintiff's initial contact with an EEO counselor was deemed to be 88 days after the effective date of Plaintiff's termination, he is time-barred from bringing this action. *See* Def. Opp. Br., 17, ECF No. 11-1.

The 45-day requirement serves as a statute of limitations which would bar Plaintiff's Title VII complaint if not tolled. *Fitzgerald v. Henderson,* 251 F.3d 345, 359 (2d Cir. 2001). However, as the requirement acts as a statute of limitations, it is subject to equitable tolling should Plaintiff make out the case for it.

Defendants argue the Court cannot award equitable tolling here because Plaintiff has not made out a claim of "rare and exceptional circumstances" which prevented him "exercising his rights." Def. Br., 13, ECF No. 11-1; *Colon v. Potter,* 51 Fed. Appx. 43, 45-46 (2d Cir. 2002). Plaintiff argues "DCMA officials have lied, misled, tricked, and deceived [Plaintiff] throughout this entire process in an effort to allow filing deadlines to pass." Pl. Opp. Br., 3, ¶ 2(c), ECF No. 12. Equitable tolling may apply to Title VII cases where, "the Plaintiff knew of a potential cause of action but delayed bringing it because of the Defendant's conduct." *Judge v. Henderson,* 172 F. Supp. 2d 410, 414 (S.D.N.Y. 2001) (quoting *German v. Pena,* 88 F. Supp. 2d 216, 222 (S.D.N.Y. 2000)).

In the letter communicating the final termination decision to Plaintiff, the DCMA outlined his options for obtaining further review of its decision. *See* Def. Br., Ex. G, ECF No. 11-3. The letter said, "You may choose only one method, and the one you choose first is considered your binding election." Those options included direct appeal to the U.S. Merit Systems Protection Board, an EEO complaint, a whistleblowing reprisal complaint with the U.S. Office of Special Counsel, or the negotiated grievance procedure. Regarding an EEO complaint, the letter said, "You must initiate contact with the Defense Contact Management Agency EEO Office within 45 days of the effective date of your removal." *Id.* The letter did not note that failure to do so would result in forfeiture of the right to bring an action under Title VII.

Plaintiff elected to proceed with the U.S. Office of the Special Counsel. Pl. Compl. ¶ 23, ECF No. 1. He did this despite the fact that the letter specified he should only do so "if you believe this action is related to your prior whistleblowing activity (making protected disclosures)…'Whistleblowing' is the disclosure of information that an individual reasonably believes shows a violation of [a law, rule, regulation, or an abuse]." Def. Br., Ex. G, ECF No. 11-1. Plaintiff proceeded to, despite the description of the types of claims OSC handles, submit his employment discrimination complaint to the OSC, who rejected it and informed him such a complaint should be filed with the EEOC, albeit apparently after the 45 days required by federal regulation to contact the EEOC had passed. Pl. Compl. ¶ 23, ECF No. 1.

Plaintiff did not make a specific request for equitable tolling, nor a satisfactory argument that he delayed bringing an EEOC claim because of Defendants' actions. Should Plaintiff submit an amended complaint that includes additional facts that make out well-pleaded Title VII claims, he should have the opportunity to include an argument for why equitable tolling should apply to his Title VII claims.

## CONCLUSION

For the reasons given, I recommend that the Court GRANT Defendants' motion to dismiss. I further recommend that Plaintiff be granted leave to amend his complaint and be given 30 days to file an amended complaint.

## OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See Frydman v. Experian Info. Sols., Inc.*, 743 F. App'x 486, 487 (2d Cir. 2018); *McConnell v. ABC-Amega, Inc.*, 338 F. App'x 24, 26 (2d Cir. 2009); *Tavarez v. Berryhill*, No. 15-CV-5141 (CS) (LMS), 2019 WL 1965832, at *30 (S.D.N.Y. May 1, 2019); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

**SO ORDERED.**

                                                            /s/
                                          Steven L. Tiscione
                                          United States Magistrate Judge
                                          Eastern District of New York

Dated: Central Islip, New York
         February 24, 2022